**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

**IN RE:**

**PRAYER HOUSE OF DELIVERANCE**        **CASE NO.  10-32874-E**
**PENTECOSTAL MINISTRIES, INC.**

**DEBTOR- IN- POSSESSION**        **CHAPTER 11**

**DISCLOSURE STATEMENT**

**FOR**

**PRAYER HOUSE OF DELIVERANCE**
**PENTECOSTAL MINISTRIES, INC.**

**Dated: June 22, 2011**

**Respectfully submitted,**

**KIGHT LAW FIRM**

By /s/ Yolanda R. Kight
Yolanda R. Kight
*Attorney for the Debtor-in-Possession*
4081 Riverdale Road, Ste 104
Memphis, TN 38115
(901) 761-3045

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

In re:

PRAYER HOUSE OF DELIVERANCE                    CASE NO.  10-32874-E
PENTECOSTAL MINISTRIES, INC.

Debtor-in-Possession                           CHAPTER 11

---

DISCLOSURE STATEMENT

---

# I.
# INTRODUCTION

Prayer House of Deliverance Pentecostal Ministries, Inc. is the Debtor in a Chapter 11

Bankruptcy case.  On November 23, 2010, Debtor commenced a bankruptcy case by filing

a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. §

101 et seq., Chapter 11 allows the Debtor, and under some circumstances, creditors and

others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for

the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a

combination of both. Debtor is the party proposing the Plan sent to you in the same envelope as

this document.

**THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR
THE ENCLOSED PLAN.**

This is a reorganizing plan. In other words, the Proponent seeks to accomplish payments

under the Plan by continuing to operate the business where it will receive monthly income from

tithes and offerings, capital campaign contributions, increasing membership.  The Debtor will

decrease unnecessary expenses which will create more cash flow.  In addition, the Debtor will

operate a barber shop, daycare, and catering business which will produce more income.  The

Effective Date of the proposed Plan is June 22. 2011.

**A. Purpose of This Document**

      This Disclosure Statement summarizes what is in the Plan, and tells you certain

information relating to the Plan and the process the Court follows in determining whether or not

to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

**KNOW ABOUT:**

**(1) WHO CAN VOTE OR OBJECT,**

**(2) WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if**

**the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR**

**CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3) THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS**

**DURING THE BANKRUPTCY,**

**(4) WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT**

**TO CONFIRM THE PLAN,**

**(5) WHAT IS THE EFFECT OF CONFIRMATION, AND (6) WHETHER THIS PLAN IS**

**FEASIBLE.**

      This Disclosure Statement cannot tell you everything about your rights. You should

consider consulting your own lawyer to obtain more specific advice on how this Plan will affect

you and what is the best course of action for you. Be sure to read the Plan as well as the

Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure

Statement, the Plan provisions will govern.  The Code requires a Disclosure Statement to contain

"adequate information" concerning the Plan.  Any party can now solicit votes for or against the

Plan.

**B. Deadlines for Voting and Objecting; Date of Plan**

**Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE

NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS

THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1. Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take

place on a date to be determined by the United States Bankruptcy Court for the Western District

of Tennessee in Memphis, Tennessee.

**2. Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

and return the ballot in the enclosed envelope to Yolanda R. Kight at Kight Law Firm  4081

Riverdale Road, Suite 104, Memphis, TN 38115.  Your ballot must be received by Voting

Record Date, which is contained on the Ballot, or it will not be counted.

**3. Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon

Yolanda R. Kight at Kight Law Firm, 4081 Riverdale Road, Suite 104, Memphis, TN 38115 by

the date determined by the United States Bankruptcy Court for the Western District of Tennessee

in Memphis, Tennessee.

**4. Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Yolanda R. Kight at Kight Law Firm, 4081 Riverdale Road, Suite 104, Memphis, TN 38115 or by phone at (901) 761-3045.

**C. Disclaimer**

The financial data relied upon in formulating the Plan is based on monthly operating reports. The information contained in this Disclosure Statement is provided by James Wright, CPA . The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

**A. Description and History of the Debtor's Business**

The Debtor is a not for profit corporation operating as a church known as Prayer House of Deliverance Pentecostal Ministries, Inc. and has been in this business since April 3, 2000.

**B. Principals/Affiliates of Debtor's Business**

Key members of the Board of Directors are:

Romalic Jones

Christina Hopson

Evelyn Jones

Carlos Duncan

Dennis Crutchfield

Bettye Dolden

<u>Key officers of the corporation are</u>:

Pastor/Chairperson-Romalic Jones

Secretary—Christina Hobson

Treasurer—Carlos Duncan

## C. Management of the Debtor Before and After the Bankruptcy

The Debtor's business and property shall be managed during the period of the Plan by the Debtor's present management, Pastor Chairperson Romalic Jones and Secretary Christina Hobson. Pastor Chairperson Romalic Jones and Christina Hobson share in the administrative duties of the business in which they perform a variety of administrative and clerical duties necessary to run the business efficiently. They serves as information and communication manager for the church; plan and schedule meetings and appointments; organize and maintain paper and files; manages projects, disseminate information via phone or mail and email. They also handle travel and guest arrangements. Pastor Chairperson Romalic Jones also creates capital campaigns and other projects Chairperson Romalic Jones or Christina Hobson receive any compensation for these services.

## D. Events Leading to Chapter 11 Filing

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case: Prior to filing, Debtor purchased its existing property where it operates its business that is located at 3180 Getwell Road Memphis, Tennessee 38118 for approximately Seven Hundred Fifteen Thousand Dollars and No Cents ($715,000.00) on March 31, 2005 when the building was worth approximately 1.2 million. Foundation Resource Capital provided funding for the acquisition of the property by Debtor and secured a lien on the property. From March 31, 2005 until approximately September 2009, Debtor made consistent payments of Six Thousand Forty-Three Dollars and Thirty-Nine Cents ($6143.39) for total payments made of Three Hundred Thirty-One

Thousand Dollars Seven Hundred Forty-Three Dollars and Six Cents ($331,743.06).  Debtor

became delinquent in its payments to Foundation Resource Capital when members starting

experiencing personal financial difficulties due to a change in the economy and were unable to

pay tithes and offerings as they previously had.  The Debtor also experienced a change in

administration which led to the church losing some paying members.  Debtor attempted to cure

the default on the mortgage by paying Ten Thousand Dollars and No Cents ($10,000) to the

Matrix Group to negotiate a loan modification with Foundation Capital Resources.  Debtor made

agreed upon arrearage payments in the amount of Five Hundred Dollars and No Cents ($500.00)

to Foundation Capital Resources in the interim until the Matrix Group advised them to stop

making the payment.  Upon learning that the Matrix Group defrauded Debtor in that it never

made contact with Foundation Capital Resources to negotiate a loan modification and after

Debtor was unsuccessful in receiving any monies it paid back from the Matrix Group, Debtor

filed a voluntary bankruptcy petition on November 23, 2010.  Upon filing the Chapter 11 case,

Debtor was able to stop the foreclosure on the property owned by Debtor to try to orderly reorganize

the business and the assets of the Debtor.

**E. Significant Events During the Bankruptcy**

**1. Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during

this case:

Significant events that have occurred upon the filing of the case are a Motion to Dismiss filed

by the U.S. Trustee, Motion to Prohibit Use of Cash Collateral filed by Foundation Capital Resource,

Motion for Relief from Stay filed by Foundation Capital Resource, Motion to Use Cash Collateral

filed by Debtor, Objection to Motion to Dismiss filed by Debtor, Objection to Motion to Prohibit Use

of Cash Collateral filed by Debtor, and Objection to Motion for Relief filed by Debtor all of which

have been resolved by agreement of the interested parties.  The Debtor is making payments to

Foundation Capital Resource as agreed between the parties and Debtor is also maintaining ongoing

expenses of the business.

The Court has approved the employment of the following professionals: James Wright,

CPA.

Currently, the following significant adversary proceedings and motions are still pending:

Consent Orders/Orders regarding the Motion to Dismiss filed by the U.S. Trustee, Motion to

Prohibit Use of Cash Collateral filed by Foundation Capital Resource, Motion for Relief from Stay

filed by Foundation Capital Resource, Motion to Use Cash Collateral filed by Debtor, Objection to

Motion to Dismiss filed by Debtor, Objection to Motion to Prohibit Use of Cash Collateral filed by

Debtor, and Objection to Motion for Relief filed by Debtor have not yet been entered.

**2. Other Legal Proceedings**

The Debtor is not currently involved in any non-bankruptcy legal proceedings.

**3. Actual and Projected Recovery of Preferential or Fraudulent Transfers**

No preferential or fraudulent conveyance actions exist and none are expected to be filed.

**4. Procedures Implemented to Resolve Financial Problems**

To attempt to fix the problems that led to the bankruptcy filing, Debtor has implemented

the following procedures: Debtor is working with CPA James Wright to develop a budget that

will decrease all unnecessary expenses and allow maximum use of current income.  In addition,

Debtor will increase income by such efforts including capital campaigns, increased

memberships, and operating a barbershop, daycare, and catering business.

**5. Current and Historical Financial Conditions**

Debtor's current income and expenses are listed in schedule A which is Debtor's most

recent Profit and Loss Statement.  The Profit and Loss Statement was prepared by CPA James

Wright who used the (i) the cash accounting method used, (ii) the financial statements are prepared in conformity with generally accepted accounting principles, and (iii) the financial statements have not been audited.

The identity and fair market value of the estate's assets are listed in Exhibit A and Debtor's Profit and Loss statement can be found in Exhibit B.

## III.

## SUMMARY OF THE PLAN OF REORGANIZATION

### A. What Creditors and Interest Holders Will Receive Under The Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

### B. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan.

| NAME | AMOUNT OWED | TREATMENT |
|---|---|---|
| Court and Clerk Office Fees | 1039.00 | Paid in Full on Effective Date |
| Office of US Trustees Fees | 975.00 | Paid in Full on Effective Date |
| Attorney Fees | Accruing | 10,000 paid |
| CPA | 1500.00 | Paid in Full on Effective Date |

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

## 2. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8)40.  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8)41 priority tax claims and their treatment under the Plan:

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| NONE | | |
| | | |

## C. Classified Claims and Interests

**1. Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following chart

lists all classes containing Debtor's secured pre-petition claims and their treatment under

this Plan:

| Class Description | Treatment Under the Plan | |
|---|---|---|
| **Class 1** **Foundation** **Capital Resources** *Impaired* | **Estimated Amount of Claim:** | **$810,083.96** |
| | Class 1 consists of the secured claim of Foundation Capital Resources secured by mortgage on property located at 3180 and 3182 Getwell Road Memphis, TN 38118.  The liens will survive the Chapter 11 and will continue in accordance with the contractual terms of the parties' underlying post-petition agreement until paid in full. (See Exhibit C for a detailed breakdown of contractual payments.) | |
| **Class 2** **City of Memphis** **Property Taxes** *Impaired* | **Estimated Amount of Claim:** | **$ 11,706.93** |
| | Class 2 claim for City of Memphis property taxes will be paid in accordance with the bankruptcy statutes within the five (5) year period. | |
| **Class 3** **Shelby County** **Property Taxes** *Impaired* | **Estimated Amount of Claim:** | **$   120.24** |
| | Class 3 claim for Shelby County property taxes will be paid in accordance with the bankruptcy statutes within the five (5) year period. | |
| **Class 4** **Corporate Air** *Impaired* | **Estimated Amount of Claim:** | **$12,975.00** |
| | Class 4 consists of the secured claim of Corporate Air secured by air conditioner units located on property at 3180 Getwell Road Memphis, TN 38118 which will be paid at a | |

monthly rate of $216.25 until balance is paid in full within the five (5) year period.

## 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.  There are no priority unsecured claims.

## 3. Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims (see Exhibit H for detailed information about each general unsecured claim):

| | |
|---|---|
| **Class 1**<br>**Unsecured Claims**<br>**Not Entitled to Priority**<br>*Impaired* | **Estimated Amount of Claims:** $139,239.05<br><br>Class 1 claims consist of allowed unsecured claims not entitled to priority and rejection claims under Section 365 of the Code, including Pitney Bowes, Inc.  Class 1 claims will be paid from the operation of the business of 10% of their claims to be paid pro rata share over five (5) years. |

## 4. Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock  in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and

limited partners. If the Debtor is an individual, the Debtor is the interest holder.  There are no

interest holders.

## D. Means of Effectuating the Plan

## 1. Funding for the Plan

The Plan will be funded by the following:

The Debtor intends to accomplish payments under the Plan by continuing to operate the

business where it will receive monthly income from tithes and offerings, capital campaign

contributions, increasing membership.  The Debtor will decrease unnecessary expenses which

will create more cash flow.  In addition, the Debtor will operate a barber shop, daycare, and

catering business which will produce more income

## 2. Post-confirmation Management

The Debtor's business and property shall continue to be managed post-confirmation by the

Debtor's present management, Pastor Chairperson Romalic Jones and Secretary Christina Hobson.

Pastor Chairperson Romalic Jones and Christina Hobson share in the administrative duties of the

business in which they perform a variety of administrative and clerical duties necessary to run the

business efficiently.  They serves as information and communication manager for the church; plan

and schedule meetings and appointments; organize and maintain paper and files; manages projects,

disseminate information via phone or mail and email.  They also handle travel and guest

arrangements.  Pastor Chairperson Romalic Jones also creates capital campaigns and other projects

Chairperson Romalic Jones or Christina Hobson receive any compensation for these services.

## 3. Disbursing Agent

Treasurer Carlos Duncan  shall act as the disbursing agent for the purpose of making all

distributions provided for under the Plan. The Disbursing Agent shall serve without bond and

shall receive no compensation for distribution services rendered and expenses incurred pursuant

to the Plan.

## E. Other Provisions of the Plan

### 1. Executory Contracts and Unexpired Leases

#### a. Assumptions

The following are the unexpired leases and executor contracts to be assumed as obligations of

the reorganized Debtor under this Plan.

| | |
|---|---|
| **Class 1**<br>**Lease with BSFS** | **Estimated Amount of Claims:**            $ 15,333.80 |
| **Equipment Leasing**<br>*Unimpaired* | Class 1 consists of the claim of BSFS Equipment Leasing which will be paid by the contractual terms of the lease agreement of monthly rental amount of $200.00 in accordance with the terms of the lease. |
| **Class 2**<br>**Lease with Xerox** | **Estimated Amount of Claims:**            $ 31,114.64 |
| **Corporation**<br>*Unimpaired* | Class 2 consists of the claim of Xerox Corporation which will be paid by the contractual terms of the lease agreement of monthly rental amount of $651.47 in accordance with the terms of the lease. |
| **Class 3**<br>**FPC Funding, LLC**<br>*Unimpaired* | **Estimated Amount of Claim:**            $    1,400.00<br>Class 3 consists of the claim of FPC Funding, LLC for lease of church sanctuary chairs located on property at 3180 Getwell Road Memphis, TN 38118 which will be paid by the contractual terms of the lease agreement of monthly rental amount of $228.28 in accordance with the contractual terms of the parties' underlying agreement. |

On the Effective Date, each of the unexpired leases and executory contracts listed above

shall be assumed as obligations of the reorganized Debtor. The Order of the Court confirming the

Plan shall constitute an Order approving the assumption of each lease and contract listed above. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**b. Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected: Pitney Bowes, Inc.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS July 21, 2011.**

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**2. Changes in Rates Subject to Regulatory Commission**

**Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates**.**

**3. Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

**G. Tax Consequences of Plan**

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.**

The following disclosure concerning tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT make any representation regarding tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The Debtor assumes no responsibility for the tax effect that Confirmation and receipt of any distribution under the Plan may have on any given creditor or party in interest.

**THIS DISCLOSURE STATEMENT IS NOT INTENDED TO BE AND SHOULD NOT BE CONSTRUED AS LEGAL OR TAX ADVICE TO ANY CREDITOR OR PARTY IN INTEREST AND SUCH PERSONS ARE STRONGLY ADVISED TO CONSULT THEIR OWN LEGAL OR TAX ADVISORS IF THEY HAVE QUESTIONS.**

No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan and none will be sought. Additionally, no ruling or determinations of the Internal Revenue Service or any her taxing authority have been or will be sought. No representations are being made concerning the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or any Claim or Interest Holder.

### IV.

### CONFIRMATION REQUIREMENTS AND PROCEDURES

**PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.**

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The proponent CANNOT and DOES NOT represent that the discussion contained below

is a complete summary of the law on this topic.  Many requirements must be met before the

Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in

good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors

would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements

are not the only requirements for confirmation.

## A. Who May Vote or Object

### 1. Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below

not everyone is entitled to vote to accept or reject the Plan.

### 2. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or

interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2)

classified in an impaired class.

### a. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest

to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party

in interest brings a motion objecting to the claim. When an objection to a claim or interest is

filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court,

after notice and hearing, either overrules the objection or allows the claim or interest for voting

purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS MARCH 30,**

**2011.**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

**b. What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that secured classes 1-4,  Class 1 unsecured claims, are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that the executor contracts/leases Class 1-3 are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

**3. Who is Not Entitled to Vote**

The following four types of claims are not entitled to vote:  (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes

are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

**EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

**4. Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**5. Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on nonaccepting classes.

**6. Votes Necessary for a Class to Accept the Plan**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

**7. Treatment of Nonaccepting Classes**

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

**8. Request for Confirmation Despite Nonacceptance by**

**Impaired Class(es)**

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.


**B. Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same

priority share in proportion to the amount of their allowed claim in relationship to the amount of

total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all

creditors are paid, if any.  For the Court to be able to confirm this Plan, the Court must find that

all creditors and interest holders who do not accept the Plan will receive at least as much under

the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent

maintains that this requirement is met here.

      Below is a demonstration of Liquidation analysis, that all creditors and interest holders

will receive at least as much under the Plan as such creditor or interest holder would receive

under a Chapter 7 liquidation. (See Exhibit A for a detailed explanation of how the following

assets are valued. This information is provided by CPA James Wright .)

## LIQUIDATION ANALYSIS

**CURRENT ASSETS**

| | | |
|---|---|---|
| 1.  **Cash on hand** | $ | **120.22** |
|     **TOTAL CURRENT ASSETS** | $ | **120.22** |

**FIXED ASSETS**

| | | |
|---|---|---|
| 1.  **Office furniture & equipment** | $ | **18,445.00** |
| 2.  **Church interior** | $ | **58,440.00** |
| 3.  **Kitchen equipment** | $ | **2,850.00** |
| 4.  **Security system** | $ | **2,150.00** |
| 5.  **Building & Land** | $ | **1,128,400.00*** |
|     **TOTAL FIXED ASSETS** | $ | **1,210,285.00** |

**OTHER ASSETS**

| | | |
|---|---|---|
| 1.  Computer equipment | $ | **9,302.00** |
| 2.  Musical equipment | $ | **5,517.43** |
| **TOTAL OTHER ASSETS** | $ | **14,819.43** |
| **TOTAL ASSETS AT LIQUIDATION VALUE** | $ | **1,225,224.65** |

**LESS:**

| | | |
|---|---|---|
| **Secured Creditors Recovery** | $ | **1,062,280.31** |
| **Chapter 7 Trustee Fees and Expenses** | $ | **13,707.00**** |
| **Debtor's claimed exemptions** | $ | **23,800.00** |
| (1) Balance for unsecured claims | $ | **125,437.30** |
| (2) Total amt of unsecured claims | $ | **139,239.05** |

**\*This does not reflect an actual appraisal.  This disclosure will be amended to reflect the actual appraisal when it is received.**

**\*\*This is an estimate trustee receiving fees in amount of $10, 207.00 based on theunsecured Claims in the amount of $139, 239.05 and possibly hiring professionals such as a CPA for approximately 1500.00 and an appraiser for $2000.00.**

The Debtor believes that the Plan is in the best interest of the Claimants.  In a Chapter 7 proceeding, a Chapter 7 Trustee would be appointed to liquidate the Debtor's unexempt assets. There is no guarantee that the Trustee would be able to sell the Debtor's assets for the full value.

**C. Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.  There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses

which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of

feasibility is satisfied.

The second aspect considers whether the Proponent will have enough cash over the life of the

Plan to make the required Plan payments.  The Debtor believes that it will be able to timely

perform all the obligations described in the Plan in that it should have sufficient cash flow to pay

and service its debt obligations and fund its plan, and therefore, believes the Plan is feasible.

## V.

## EFFECT OF CONFIRMATION OF PLAN

### A. Discharge

This Plan provides that upon a date determined by the Court , Debtor shall be discharged of

liability for payment of debts incurred before confirmation of the Plan, to the extent specified in

11 U.S.C.§1141. However, the discharge will not discharge any liability imposed by the Plan.

### B. Revesting of Property in the Debtor

Except as provided in Section {V.D.}, and except as provided elsewhere in the Plan, the

confirmation of the Plan revests all of the property of the estate in the Debtor.

### C. Modification of Plan

The Proponent of the Plan may modify the Plan at any time before confirmation.

However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only

if (1) the Plan has not been substantially consummated and (2) the Court authorizes the

proposed modifications after notice and a hearing.

### D.  Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under §

1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court

orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had

been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will

revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property,

but only to the extent that relief from stay was not previously authorized by the Court during this

case.  The order confirming the Plan may also be revoked under very limited circumstances. The

Court may revoke the order if the order of confirmation was procured by fraud and if the party in

interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

the order of confirmation.

**F. Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall

file a motion with the Court to obtain a final decree to close the case.

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST RECOVERIES
POSSIBLE FOR THE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE
DEBTOR. THE DEBTOR STRONGLY RECOMMENDS THAT YOU VOTE TO ACCEPT
THE PLAN.**

Date: June 22, 2011

Prayer House Deliverance Pentecostal Ministries, Inc

/s/Romalic Jones___
By: Romalic Jones
Its: Pastor/Chairperson

.
/s/Yolanda R. Kight
Yolanda R. Kight
Kight Law Firm

## SUPPORTING DECLARATIONS

I, Pastor Romalic Jones have personal knowledge of the Debtor's operations and assisted in preparing this Disclosure Statement and attest to the truthfulness and accuracy of everything stated in the Disclosure Statement.

/s/Pastor Romalic Jones
Pastor Romalic Jones
.

# EXHIBIT A - LIST OF ALL ASSETS

The specific assets owned by the Debtor and their corresponding values as of approximate

date of May 31, 2011 are as follows:

| | | | |
|---|---|---|---|
| a. | 1st TN DIP/1642 | $ | 120.22 |
| b. | Building | $ | 827,200.00 |
| e. | Church Interior | $ | 58,440.00 |
| f. | Office Furniture and Fixtures | $ | 18,445.00 |
| g. | Computer Equipment | $ | 9,302.00 |
| h. | Kitchen Equipment | $ | 2,850.00 |
| i. | Security System | $ | 2,150.00 |
| j. | Musical Equipment | $ | 5517.43 |
| k. | Land/Parcel 073029 00012 | $ | 119,300.00 |
| l. | Land/Parcel 073029 0003C | $ | 181,900.00 |

TOTAL                    $1,225,224.65

**EXHIBIT "B"**

Prayer House of Deliverance Pentecostal Ministries, Inc.
Profit & Loss
May 2011


Ordinary Income/Expense
    Income
        Tithes/Offerings 7,015.99
    Total Income 7,015.99
    Expense
        Automobile Expense 88.00
        Bank Service Charges 69.00
        Contract Labor 100.00
        Equipment Rental 173.07
        Evangelism and Special Eve... 690.60
        Fees 325.00
        Insurance Expense 1,815.39
        Internet and Website Service 275.93
        Meals and Entertainment 70.96
        Musician Pay 1,200.00
        Pest Control 480.00
        Pastor Compensation 1,394.96
        Publications 127.30
        Repairs and Maintenance 1,385.00
        Telephone Expense 263.79
        Transportation Expense 40.00
        Travel 3,113.64
        Utilities 1,778.58
    Total Expense 13391.22
Net Ordinary Income (6375.23)
Net Income (6375.23)

**EXHIBIT C**

**FOUNDATION CAPITAL LOAN SUMMARY**

**Original Loan Balance**                    **$830,725.91**

**Interest Rate**                            **9.75%**

**Loan Term (Years)**                        **30**

| Payments | | Year-end Principal Balance |
|---|---|---|
| **Year 1** | **$3,800.00/month** | **$867,747.07** |
| **Year 2** | **$3,800.00/month** | **$908,543.54** |
| **Year 3** | **$4,800.00/month** | **$940,949.28** |
| **Year 4** | **$5,800.00/month** | **$964,108.63** |
| **Year 5** | **$5,800.00/month** | **$989,629.70** |
| **Amortizing** | **$8,818.96** | |